1

2

3

4                      UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6

7    MEAZA SEGA BIHIL,                    Case No.  15-cv-02036-JCS

8              Plaintiff,

9         v.                              **ORDER GRANTING PLAINTIFF'S
                                          MOTION FOR SUMMARY JUDGMENT
10   CAROLYN COLVIN,                      AND REMANDING FOR FURTHER
                                          PROCEEDINGS**
11            Defendant.
                                          Re: Dkt. Nos. 17, 18

## I.    INTRODUCTION

Plaintiff Meaza Sega Bihil challenges the decision of Defendant Carolyn Colvin, Acting Commissioner of Social Security (the "Commissioner"), finding Bihil not disabled and ineligible for disability benefits.  Bihil argues that the administrative law judge ("ALJ") who denied her application for benefits erred—first, in finding that work Bihil can perform exists in significant numbers in the national economy and second, in failing to call a medical expert to testify as to whether Bihil's impairments are as severe as impairments the Commissioner recognizes as disabling.  The parties have filed cross motions for summary judgment pursuant to Civil Local Rule 16-5.  For the reasons stated below, Bihil's motion is GRANTED, the Commissioner's motion is DENIED, and the case is REMANDED for further administrative proceedings to clarify Bihil's eligibility to receive benefits and the positions and numbers of jobs available to Bihil.[1]

## II.   BACKGROUND

### A.    Procedural Background

Plaintiff Meaza Sega Bihil filed for Social Security Disability Insurance ("SSDI") benefits

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

on May 4, 2010, alleging she became disabled on December 20, 2000 due to "back problems, dislocated disc, asthma, myopathy, diabetes, chronic pain, hyperlipidemia, gastroesophageal reflux disease, and gastro intestinal [sic] disease." Administrative Record ("AR," dkt. 13) at 84. Bihil's last date insured was March 31, 2006. *Id.* Bihil's initial claim was denied by the Social Security Administration ("SSA") on September 17, 2010 and the denial was affirmed on reconsideration on July 8, 2011. *Id.* at 84, 88. Bihil requested a hearing before an ALJ; a hearing was held on March 15, 2013 and a supplemental hearing was held August 7, 2013. *Id.* at 43, 58. The ALJ denied Bihil's request for benefits on August 26, 2013. *Id.* at 28. The SSA's Appeals Council declined to review the ALJ's decision on March 9, 2015. *Id.* at 2. Bihil now requests that the Court review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

### B.    The Administrative Hearings

#### 1.    Initial Hearing, March 15, 2013

The ALJ held an initial hearing on March 15, 2013 with Bihil, her counsel, a vocational expert, and an interpreter. *Id.* at 60. The hearing began with Bihil's testimony about about her personal background. She testified that she received up to a third grade education in Asmara, Eritrea. *Id.* at 62. Bihil worked as a housekeeper in a hotel in the United States from 1988 until 2001. *Id.* at 63. Bihil testified that she stopped working after sustaining a back injury at work. *Id.* She described unrelenting pain in her lower back and left leg that made it impossible for her to work. *Id.* Bihil testified that she was unable to prepare meals for herself without sitting down and unable to go grocery shopping because she could not carry any items. *Id.* at 65. Bihil also testified that she was unable to sleep due to the pain in her back and legs. *Id.* at 66. Bihil explained that she declined to have elective back surgery after speaking to others who still experienced pain after surgery. *Id.* She was prescribed pain medication by her doctors and received shots which relieved her pain for one week. *Id.* She testified that she attended physical therapy which was unsuccessful in relieving her pain for more than one day. *Id.*

The ALJ questioned Bihil about why she waited nine years to file for disability benefits. *Id.* at 68. Bihil responded that she thought that she would "be okay and then [she could] go back to work." *Id.* The ALJ also asked about the status of Bihil's worker's compensation claim.

United States District Court
Northern District of California

1   Bihil's counsel informed the ALJ that Bihil received worker's compensation benefits from 2001

2   through 2004.  *Id.* at 69.

3        The ALJ then questioned Vocational Expert Lawrence Hughes (the "VE").  The VE

4   testified that the plaintiff's past relevant work as a housekeeping cleaner in a hotel was unskilled

5   light work.  *Id.* at 72–73.  The VE also testified that Bihil worked as a back-up cashier at a family-

6   owned deli after March 31, 2006, her last date insured.  *Id.*  Working as a cashier is also unskilled

7   light work.  *Id.*  The VE also suggested that Bihil may have completed vocational rehabilitation

8   training as a daycare assistant but testified that it appeared that Bihil never actually worked in that

9   capacity.  *Id.* at 72.  The ALJ asked Bihil why she didn't pursue a job as a childcare provider and

10  Bihil responded that her injuries made it difficult for her to keep up with the children and that she

11  was "unable to move around."  *Id.* at 73.

12       The ALJ asked the VE about the occupations available to a person with a residual

13  functional capacity ("RFC") similar to Bihil's.  The ALJ asked about an RFC based on the

14  following limitations:

> An individual of the claimant's age, education and experience who
> can lift up to ten pounds frequently, twenty occasionally, stand and
> walk six hours out of eight with normal breaks, bend and stoop
> occasional[ly], sitting up to six hours per day, no manipulative
> limitations, no limitation in speech, hearing or vision, simple
> repetitive tasks not requiring the use of English.

19  *Id.* at 74.  The VE testified that a person with those limitations would still be able to work as a

20  housekeeping cleaner.  *Id.*  The VE also testified that such a person could work as a cashier in the

21  manner in which Bihil did since her job was in a specialty shop or limited area which required

22  little use of English.  *Id.*  The VE also claimed that "there are some other jobs of course."  *Id.*

23       Bihil's counsel posed a slightly different set of limitations, including:

> Aged 43, limited English, marginal education, past work unskilled,
> can lift ten pounds occasionally, less than ten pounds frequently,
> stand and/or walk less than two hours in an eight-hour workday, sit
> less than six hours in an eight hour workday, occasionally climb
> stairs, ladders, ropes and scaffolds, occasionally balance,
> occasionally kneel, never crouch, never crawl, occasionally stoop,
> with limited exposure to temperature extremes, dust, vibration,
> humidity and wetness and hazards such as machinery and height,
> fumes, odors, chemicals and gases.

1    *Id.* at 74–75.  The VE testified that with such limitations, a person could not perform Bihil's past

2    relevant work.  *Id.* at 75.  The VE also testified that there would be no other work that such a

3    person could do.  *Id.*

4                    **2.      Supplemental Hearing, August 7, 2013**

5            The ALJ held a supplemental hearing on August 7, 2013 during which she questioned

6    Bihil further about the vocational training she received and clarified the hypotheticals posed to the

7    VE at the prior hearing.

8            First, the ALJ elicited further testimony from Bihil about her vocational training as a

9    childcare provider.  Bihil testified that she was trained over a period of three months in 2002.  *Id.*

10   at 48–49.  She explained that she performed an unpaid internship at the completion of the training

11   program which involved watching over young children and reading to them.  *Id.*  Bihil testified

12   that she had difficulty at this position because she was unable to keep up with the children's

13   physical activities and was unable to read to others.  *Id.* at 49.  Bihil explained that she was able to

14   communicate with the children but when posed certain questions she was unable to give an answer

15   because she could not comprehend the question.  *Id.*

16          Second, the ALJ clarified the hypothetical limitations posed to the VE in the prior hearing.

17   The ALJ explained that she intended the VE to testify about the availability of sedentary jobs with

18   no English or skills required.  *Id.* at 52.  The VE testified that a person with those limitations

19   would be able to perform three specific jobs: a "cable worker in fabrication," a "glass products

20   waxer," or a stuffer.  *Id.* at 52–53.  The VE testified that there are 200 jobs as a "cable worker in

21   fabrication" in California and 2,900 jobs nationwide.  *Id.*  The VE testified that there are between

22   150 and 200 jobs as a glass products waxer statewide and 2,100 nationally.  *Id.*  The VE testified

23   that a stuffer works in the toys and games industry.  *Id.*  There is a discrepancy between the

24   transcript of the hearing and the ALJ's decision regarding the number of jobs available as a

25   stuffer.  The transcript of the hearing reflects that the VE testified that there are 300 jobs statewide

26   and 36,000 nationally.  *Id.*  The ALJ's decision indicates that there are 300 stuffer jobs statewide

27   but 3,600 nationally.  *Id.* at 28.  The VE additionally testified that there are 100 to 120 additional

28   occupation titles that fit the ALJ's hypothetical that account for about 100,000 total jobs

United States District Court
Northern District of California

4

1    nationwide.  *Id.* at 53.  Bihil's counsel re-posed the same hypothetical from the initial hearing to

2    the VE and the VE confirmed that with such limitations a person would be unable to perform

3    Bihil's past work and there is no other work that person could perform.  *Id.*

4            **C.**       **The ALJ's Analysis and Findings**

5                      **1.**       **Legal Standard for Disability**

6          Disability insurance benefits are available under the Social Security Act when an eligible

7    claimant is unable "to engage in any substantial gainful activity by reason of any medically

8    determinable physical or mental impairment . . . which has lasted or can be expected to last for a

9    continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C.

10   § 423(a)(1).  A claimant is only found disabled if his physical or mental impairments are of such

11   severity that he is not only unable to do his previous work but also "cannot, considering his age,

12   education, and work experience, engage in any other kind of substantial gainful work which exists

13   in the national economy."  42 U.S.C. § 423(d)(2)(A).  The claimant bears the burden of proof in

14   establishing a disability.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

15         The Commissioner uses a "five-step sequential evaluation process" to determine if a

16   claimant is disabled.  20 C.F.R. 404.1520(a)(4).  At Step One, the ALJ must determine if the

17   claimant is engaged in "substantial gainful activity."  20 C.F.R. 404.1520(a)(4)(I).  If so, the ALJ

18   determines that the claimant is not disabled and the evaluation process stops.  If the claimant is not

19   engaged in substantial gainful activity then the ALJ proceeds to Step Two.

20         At Step Two, the ALJ must determine if the claimant has a "severe" medically

21   determinable impairment.  An impairment is "severe" when it "significantly limits [a person's]

22   physical or mental ability to do basic work activities.  20 C.F.R. 404.1520(c).  If the claimant does

23   not have a "severe" impairment then the ALJ will find that the claimant is not disabled.  If the

24   claimant does have a severe impairment, the ALJ proceeds to Step Three.

25         At Step Three, the ALJ compares the claimant's impairment with a listing of severe

26   impairments (the "Listing").  *See* Appendix 1, Subpart 1 of 20 C.F.R. Part 404.  If the claimant's

27   impairment is included in the Listing, then the claimant is disabled.  The ALJ will also find a

28   claimant disabled if the claimant's impairment or combination of impairments equals the severity

United States District Court
Northern District of California

5

1    of a Listed impairment.  If a claimant's impairment does not equal a Listed impairment, then the

2    ALJ proceeds to Step Four.

3          At Step Four, the ALJ must assess the claimant's Residual Functional Capacity ("RFC").

4    An RFC is "the most [a person] can still do despite [that person's] limitations" caused by their

5    impairments and related symptoms.  20 C.F.R. § 404.1545(a)(1).  The ALJ then determines

6    whether, given the claimant's RFC, she would be able to perform her past relevant work.  20

7    C.F.R. § 404.1520(a)(4)(iv).  Past relevant work is "work that [a person] has done within the past

8    fifteen years, that was substantial gainful activity, and that lasted long enough for [the person] to

9    learn how to do it."  20 C.F.R. 404.1560(b)(1).  If the claimant is able to perform her past relevant

10   work, then the ALJ finds that she is not disabled.  If the claimant is unable to perform her past

11   relevant work, then the ALJ proceeds to Step Five.

12         At Step Five, the burden shifts from the claimant to the Commissioner.  *Johnson v. Chater*,

13   108 F.3d 178, 180 (9th Cir. 1997).  The Commissioner has the burden to "identify specific jobs

14   existing in substantial numbers in the national economy that the claimant can perform despite her

15   identified limitations."  *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).  If the

16   Commissioner is able to identify such work, then the claimant is not disabled.  If the

17   Commissioner is unable to do so, then the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

18                **2.    The ALJ's Five-Step Analysis**

19         Prior to beginning her Five-Step Analysis, the ALJ noted there was some question as to

20   whether Bihil satisfied the "insured status requirements" of Sections 216(i) and 223 of the Social

21   Security Act.  AR at 21.  The ALJ stated Bihil was last insured on March 31, 2006.  *Id.*  The

22   claimant must establish disability on or before that date in order to be entitled to disability and

23   disability insurance benefits.  *Id.*  The ALJ noted that her opinion "considers only those medically

24   determinable impairments established on or before that date."  *Id.*  The ALJ also indicates a

25   claimant is only entitled to disability benefits up to 12 months prior to her application filing date

26   and that "any finding of a period of disability predating 12 months prior to [May 4, 2010] would

27   not result in payable benefits" for Bihil.  *Id.* at 22.

28         At Step One, the ALJ found that Bihil did not engage in substantial gainful activity from

United States District Court
Northern District of California

6

the alleged onset of her disability, December 20, 2000, through the date she was last insured, March 31, 2006. *Id.* Thus, the ALJ moved on to Step Two.

At Step Two, the ALJ found that Bihil suffered from "lumbar spine degenerative disc disease with radiculopathy and obesity" which caused "more than minimal functional limitations." *Id.* The ALJ noted that while Bihil's medical records also indicate genitourinary problems and gastrointestinal problems, "there was little evidence that they caused more that minimal functional limitations" and are therefore non-severe. *Id.* Because the ALJ found that Bihil suffered from some severe impairments, she proceeded to Step Three.

At Step Three, the ALJ found that Bihil's impairments did not equal a Listed impairment and moved on to Step Four. *Id.*

At Step Four, the ALJ assessed Bihil's RFC to be:

> sedentary work with a "sit/stand option, [ability] to sit 30 minutes at a time for a total of six hours in an eight-hour day, stand and walk short distances for cumulative total of two hour in an eight hour day; lift up to 10 pounds occasionally; occasionally stoop, crouch, crawl and climb ramps and stairs; never work from ladders, ropes, or scaffolds; and never operate foot controls or work around heavy machinery; and she was limited to simple repetitive tasks not requiring the use of English.[2]

*Id.* at 23. In order to reach this conclusion, the ALJ followed a two-step process. First, she determined if there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or symptoms. *Id.* The ALJ determined that the plaintiff's lumbar spine degenerative disc disease and obesity were medically determinable conditions that could be reasonably expected to produce the claimant's pain. *Id.*

Second, the ALJ evaluated the intensity, persistence, and limiting effects of Bihil's

---

[2] The ALJ states that this is Bihil's RFC through her last date insured of March 31, 2006. AR at 22. However, the ALJ also seems to consider opinions from doctors who treated and examined Bihil in 2011 "well after her date last insured" in formulating Bihil's RFC. AR at 25. It is unclear based on the ALJ's opinion whether the RFC the ALJ assigned Bihil is the ALJ's estimation of Bihil's abilities from the onset of her disability through the present, from some point after the onset of her disability but before her last date insured through the present, or only of Bihil's present abilities. This must be clarified in further proceedings because it may impact what jobs were available that Bihil was able to perform prior to her last date insured, and consequently, whether the Commissioner is able to meet her burden of demonstrating that significant numbers of jobs were available to Bihil, rendering her not disabled.

7

symptoms to determine the extent to which they limited Bihil's functioning.  *Id.*  The ALJ discounted Bihil's testimony regarding the severity of her pain.  She notes that Bihil declined elective surgery in 2002 after expressing uncertainty if "her problems were bad enough to warrant a surgery."  *Id.* at 24.  The ALJ also found that Bihil's medical records "generally noted no significant back-related findings" throughout 2003 and 2004.  *Id.*  Further, the ALJ notes that the claimant's "daily activities are inconsistent with the functional limitations to the degree alleged;" the plaintiff was able to "perform basic independent self-care" including cooking, cleaning, washing, shopping, going for walks and to the gym, and attending school.  *Id.* at 25.  The ALJ also found that the fact that Bihil did not always comply with the recommended treatment, "such as attending physical therapy, seeing a pain psychologist, or starting a TENS unit trial" as undermining her claims of severe pain.  *Id.*

Using the RFC she determined for Bihil, the ALJ then performed Step Five, determining whether Bihil was able to perform past relevant work or any other work.  *Id.* at 27.  Based on the testimony of the VE, the ALJ found that Bihil was unable to perform her past work as a housekeeping cleaner.  *Id.*  Finally, the ALJ considered whether there existed other work in significant numbers in the national economy that Bihil could perform.  *Id.*  The ALJ found that based on the testimony of the VE, Bihil could work as a stuffer, fabrication cable worker, or a glass products waxer.  *Id.* at 28.  The ALJ additionally noted that the VE identified another 100 to 120 occupational titles comprising 100,000 jobs that would also be suitable for Bihil based on her RFC.  *Id.*  Based on the finding that there existed other work in the national economy that Bihil could perform, the ALJ determined that Bihil was not disabled.  *Id.*

### D.      Motions for Summary Judgment

#### 1.      Plaintiff's Motion

Bihil seeks remand for payment of benefits or remand for an additional administrative hearing. Pl. Mot. (dkt. 17) at 1.  Bihil argues that the ALJ's denial of benefits to Bihil was based on legal error for two reasons: (1) the ALJ incorrectly decided that there were a significant number of jobs that Bihil could perform in the national economy; and (2) the ALJ was obligated to but failed to call a medical expert to testify whether Bihil's impairments equaled a Listed impairment.

8

1    *See id.* at 1–2.

2         First, Bihil argues that the ALJ's finding that there are a significant number of jobs in the

3    national economy suitable for a person with her RFC is incorrect.  Bihil relies heavily on

4    *Gutierrez v. Commissioner of Social Security* to demonstrate that the number of jobs listed by the

5    VE was insignificant.  Pl. Mot. at 5–6 (citing *Gutierrez*, 740 F.3d 519 (9th Cir. 2014)).  Bihil

6    argues that because the Ninth Circuit held in that case that 2,500 jobs regionally and 25,000

7    nationally are not significant numbers of jobs, then the roughly 700 jobs regionally and 8,600 jobs

8    nationally that the VE identified as available to Bihil cannot be considered significant numbers.

9    *Id.*

10        Second, Bihil argues that the ALJ's failure to call a medical expert was legal error.  Bihil

11   claims that because additional medical evidence was received into the record after the state agency

12   medical consultant set forth her opinion that Bihil's impairments did not equal the severity of a

13   Listed impairment, the ALJ was obligated under Social Security Ruling ("SSR") 96-6p to call a

14   medical expert to testify as to whether the new evidence demonstrated that Bihil's impairments

15   equaled a Listed impairment.  Pl. Mot. at 8.  The ALJ's opinion acknowledged the possibility that

16   Bihil's impairments may have equaled a Listed impairment for a closed period ending in 2004.

17   AR at 26.  From this Bihil claims, "it can be inferred 'that in the opinion of the administrative law

18   judge' that additional evidence may change the State agency medical or psychological consultant's

19   finding" that Bihil's impairments do not equal a Listed impairment.  Pl. Mot. at 8 (quoting SSR

20   96-6p).  Therefore, Bihil claims, the ALJ's failure to call a medical expert to testify about the

21   severity of Bihil's impairments was legal error.

22        Bihil now asks the Court to grant summary judgment in her favor with remand for payment

23   of benefits, or in the alternative, for additional hearings for the ALJ to call a medical expert to

24   testify whether the severity of Bihil's impairments equal a Listed impairment.

25                      **2.    Defendant's Motion**

26        The Commissioner also moves for summary judgment and for an affirmation of the

27   Commissioner's finding.  Def. Mot. (dkt. 18) at 2.  The Commissioner argues that the ALJ's

28   finding that significant numbers of jobs that Bihil can perform exist in the national economy is

United States District Court
Northern District of California

9

1    supported by substantial evidence and the ALJ's choice not to call a medical expert was not legal
2    error but a proper exercise of her discretion under SSR 96-6p.  *Id.* at 3–5.

3           The Commissioner first argues that the ALJ's Step Five finding that there are a significant
4    number of jobs that Bihil can perform was supported by substantial evidence and free of harmful
5    legal error.  *Id.* at 3.  Citing *Meanel v. Apfel*, the Commissioner argues that the ALJ's finding that
6    700 jobs statewide and 8,600 jobs available nationally were significant numbers was correct given
7    that the Ninth Circuit has held between 1,000 and 1,500 jobs regionally to be significant numbers.
8    *Id.* at 4 (citing *Meanel*, 172 F.3d 1111, 1114 (9th Cir. 1999)).  The Commissioner also notes that
9    there appears to be a scrivener's error in the ALJ's decision.  *Id.*  The ALJ's decision cites the
10   number of jobs available as a stuffer is 3,600 nationally while the transcript of the hearing reflects
11   that the VE testified there were 36,000 jobs available nationally.  *Id.*  The Commissioner argues
12   that even under *Gutierrez*, as cited by Bihil, this number would be significant—as would the 100
13   to 120 other occupational titles covering 100,000 other positions suitable for Bihil.  *Id.*  Lastly, the
14   Commissioner contends that Bihil waived her right to challenge the VE's testimony about the
15   number of jobs available to her when she failed to challenge that testimony at her hearings.  *Id.* at
16   3.  Citing *Gutierrez*, the Commissioner claims that Ninth Circuit precedent dictates that by failing
17   to challenge the VE's testimony during the hearing the Plaintiff thereby accepts that the jobs listed
18   by the VE exist in significant numbers.  *Id.* (citing *Gutierrez*, 740 F.3d at 527)

19          Second, the Commissioner argues that the ALJ's failure to call a medical expert was a
20   proper exercise of her discretion, not legal error.  Noting that SSR 96-6p "states a medical expert
21   is required only if 'in the opinion of the administrative law judge or the Appeals Council' new
22   evidence might change the outcome of a decision regarding whether Plaintiff['s impairment]
23   equals a List[ed]" impairment, Def. Mot. at 5, the Commissioner argues that the ALJ's decision
24   indicated that "even if" she agreed with the plaintiff's argument that her impairments equaled a
25   listed impairment it "would have at best supported listing level impairment for a closed period"
26   which did not require the ALJ to call a medical expert.  *Id.* at 5 (citing SSR 96-6p); AR at 26.

27          **3.    Plaintiff's Reply**
28          In her Reply, Bihil contests the Commissioner's assertion that she has waived her ability to

10

United States District Court
Northern District of California

challenge whether the jobs listed by the VE exist in significant numbers.  Reply (dkt. 19) at 2.
Citing *Gutierrez*, Bihil contends that her failure to challenge the VE's testimony at her hearing
only waived arguments as to the accuracy of the numbers provided or the location of the jobs but
not whether the ALJ was correct in finding that the numbers were significant.  *Id.* (citing
*Gutierrez*, 740 F.3d at 527).

## III.   ANALYSIS

### A.   Legal Standard

When asked to review the Commissioner's decision, the Court takes as conclusive any
findings of the Commissioner which are free from legal error and supported by "substantial
evidence."  42 U.S.C. § 405(g).   Substantial evidence is "such evidence as a reasonable mind
might accept as adequate to support a conclusion," and it must be based on the record as a whole.
*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence means "more than a mere
scintilla," *id.*, but "less than a preponderance," *Desrosiers v. Sec'y of Health & Human Servs.*, 846
F.2d 573, 576 (9th Cir. 1988).   Even if the Commissioner's findings are supported by substantial
evidence, they should be set aside if proper legal standards were not applied when weighing the
evidence and in reaching a decision.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).   In
reviewing the record, the Court must consider both the evidence that supports and detracts from
the Commissioner's conclusion.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing
*Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

If the Court identifies defects in the administrative proceeding or the ALJ's conclusions,
the Court may remand for further proceedings or for a calculation of benefits.  *See Garrison v.
Colvin*, 759 F.3d 995, 1019−21 (9th Cir. 2014).

### B.   Relevance of the Timing of Bihil's Disability

The ALJ's decision considers whether Bihil is eligible for disability benefits from the onset
of her disability through March 2006.  The timing of Bihil's disability is relevant to whether Bihil
is able to receive disability benefits for two reasons: (1) a claimant can only receive benefits for
months in which she was insured; and (2) a claimant cannot receive benefits for periods of
disability that predate her application by more than 12 months.

United States District Court
Northern District of California

1    Claimants must be fully insured in any given month in order to receive benefits in that

2    month.  42 U.S.C. § 423(a)(1)(A).  In order for a claimant to be fully insured for disability

3    benefits, the claimant must have at least 20 quarters of coverage during the preceding 40 quarters.

4    *Id.* § 423(c)(B)(i).  Claimants are eligible to receive benefits for the 12 months prior to the filing of

5    an application for disability insurance benefits.  20 C.F.R. §§ 404.320, 404.621.  Claimants may

6    establish a period of disability or a "disability freeze" which freezes the claimant's insured status

7    at the onset of the period of disability.  Social Security Administration, Program Operations

8    Manual System, DI 10.105.005 (2013).  In order to establish entitlement to a period of disability

9    which has ended, the claimant must file an application for disability benefits within 12 months of

10   the termination of the disability.  *Id.*

11   Bihil first filed for disability insurance benefits on May 4, 2010.  AR at 19.  Bihil was last

12   insured in March 2006.  *Id.*  The ALJ found that Bihil was not disabled from the onset of her

13   injury in December 2000 through her last date insured on March 31, 2006.  *Id.* at 28.  The ALJ

14   also noted that even if she had accepted Bihil's argument that her impairments equaled the

15   severity of a Listed impairment, Bihil's medical records indicate that she stopped experiencing

16   significant pain in 2002 and stopped receiving Workers' Compensation benefits in 2004.  *Id.*  The

17   ALJ found that at best, these records could support a finding of a closed period of disability from

18   2000 to 2004.  *Id.*  Because Bihil did not file an application for disability benefits within 12

19   months of the termination of her disability in 2004, she is not eligible for benefits for that period

20   even if the ALJ found her disabled for that period.

21   Because of the timing of Bihil's disability and her filing, the ALJ's decision considers the

22   narrow circumstances in which Bihil could claim benefits going forward.  In order for a claimant

23   to receive any benefits, the claimant must be insured.  42 U.S.C. § 423(a)(1)(A).  Bihil is not

24   currently insured and is therefore ineligible except in limited circumstances.  *See* AR at 19.  The

25   only situation in which Bihil would be eligible for benefits is if the ALJ found that she was

26   continuously disabled from before her date last insured—here, March 31, 2006, although on the

27   facts of this case any such favorable finding would likely date to the onset of her injury in 2000—

28   until at least May 4, 2009, 12 months before her application.  *See* Social Security Administration,

United States District Court
Northern District of California

1    Program Operations Manual System, RS 00301.120 (2012).  In that case, her application for

2    disability benefits in 2010 would freeze her insured status at the onset of her disability, rendering

3    her eligible for benefits for the 12 months preceding her application and, if she remained disabled,

4    from 2010 onward.  *Id.*

5         C.    **Availability of a Substantial Number of Jobs**

6         The ALJ's finding that there was substantial work available to Bihil was not sufficient.

7    First, specific jobs identified by the VE do not constitute a significant number of jobs regionally or

8    nationally suitable for Bihil.  Second, the ALJ was also incorrect to rely on the VE's unspecific

9    testimony about other jobs available to and suitable for Bihil.

10        In order for a claimant to be found not disabled, she must be able to engage in "substantial

11   gainful work which exists in the national economy."  42 U.S.C. § 1382(a)(3)(B).  "[W]ork which

12   exists in the national economy means work which exists in significant numbers either in the region

13   where such individual lives or in several regions of the country."  *Id.*

14        As a preliminary matter, Bihil's failure to challenge the VE's testimony at her hearing does

15   not waive her ability to challenge the ALJ's finding that work she can perform exists in significant

16   numbers in the national economy.  *Gutierrez* does not stand for the proposition that by failing to

17   challenge the VE's testimony about the availability of jobs or the suitability of those jobs to the

18   plaintiff's RFC that the plaintiff then waives the right to challenge the ALJ's determination that

19   jobs specified by the VE exist in significant numbers.  *See Gutierrez*, 740 F.3d at 527.  *Gutierrez*

20   indicates that if a plaintiff fails to challenge the accuracy of the job numbers reported by the VE or

21   question the VE about the location of those jobs in relation to the plaintiff's home then the record

22   may lack sufficient evidence for the plaintiff to convincingly allege that those jobs are isolated or

23   exist in smaller numbers than reported.  *See id.*  Nowhere does the *Gutierrez* decision indicate that

24   the failure to challenge a VE's testimony precludes a plaintiff from challenging an ALJ's finding

25   that suitable jobs exist in significant numbers—what numbers are significant was in fact the very

26   question the court went on to answer.  *See id.* (concluding "that a sampling of what constitutes

27   'significant work' reveals that the ALJ's finding of 2,500 jobs in California satisfies the statutory

28   standard").

United States District Court
Northern District of California

13

United States District Court
Northern District of California

### 1.      Substantial Number of Specific Jobs

The ALJ's Step Five finding that there existed a significant number of jobs Bihil could have performed in the national economy was not supported by substantial evidence.  There is no "bright-line rule for what constitutes a 'significant number' of jobs.  However a comparison to other cases is instructive."  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012)).

In *Yelovich v. Colvin*, an unpublished decision, the Ninth Circuit held that 900 regional jobs available to a disability claimant in an unspecified region was a significant number.  *Yelovich v. Colvin*, 532 F. App'x 700, 702 (9th Cir. 2013).  The court noted that 900 jobs were "similar to numbers we have found 'significant' in the past" because it had previously held "that as few as 1,266 regional jobs *was* a significant number and . . . referenced cases finding as few as 500 jobs significant."  *Id.* (citing *Barker v. Sec'y of Heath and Human Servs.*, 882 F.2d 1474, 1478–79 (9th Cir. 1989).

The district court in *Allino v. Colvin* held that 350 regional jobs and 3,200 national jobs were not significant numbers.  *Allino v. Colvin*, 83 F. Supp. 3d 881, 887 (N.D. Cal 2015).  The court noted that the size of the region is relevant to the analysis of whether a significant number of jobs exist in the region.  *Allino*, 83 F. Supp. 3d at 887.  The court indicated that "neither the VE nor the ALJ identified the distribution of those jobs within California" and that 350 jobs spread across the state was not close enough to the 2,500 regional jobs and 1,300 regional jobs that other courts in the Ninth Circuit have found to be significant.  *Id.*  The *Allino* court also found that 3,200 jobs nationally was not a significant number.  *Id.* at 888.  Noting that "no case in this Circuit has ever found a number similar to 3,200 to be significant" nationally, the court declined to find 3,200 jobs significant when other courts in this Circuit have declined to find 4,752 jobs, 5,500 jobs, or even 14,082 jobs nationally to be a significant number.  *Id.*

In *Valencia v. Colvin*, the court held that 14,082 jobs in the national economy was not a significant number.  *Valencia v. Colvin*, No. C 11-06223 (LB), 2013 WL 1209353, at *18 (N.D. Cal. Mar. 25, 2013).  The court found that in comparison with other cases in the Ninth Circuit, where courts have found 64,000 jobs to 622,000 jobs in the national economy to be significant numbers, 14,082 jobs in the national economy is not sufficient.  *Id.*

United States District Court
Northern District of California

1    Here, the 700 jobs in the region available to Bihil fall squarely in the gap between the 900

2    jobs found to be significant in *Yelovich* and 350 jobs found insignificant in *Allino*.  *See Yelovich*,

3    532 F. App'x at 702; *Allino*, 83 F. Supp. 3d at 887.  The Court finds the size of the region here

4    relevant to the inquiry.  Although there are only 200 hundred fewer jobs here than at issue in

5    *Yelovich*, the *Yelovich* region was unspecified and likely smaller than the state of California as

6    *Yelovich* arose from an appeal from the Western District of Washington, a state smaller than

7    California in both population and geography.  *See Yelovich*, 532 F. App'x at 700.  Like in *Allino*,

8    where the court held that 350 jobs available in the state of California was not significant, the

9    region here is also the state of California and only a few hundred more jobs are suitable for Bihil.

10   *See Allino*, 83 F. Supp. 3d at 887.  The Court is not persuaded that it should further lower the

11   number of jobs necessary to be significant from *Yelovich*'s mark, particularly where the region is

12   as large and populous as California.  Accordingly, the Court finds that the 700 jobs available to

13   Bihil in the region are not sufficient.

14   The 8,600 jobs suitable for Bihil in the national economy is also not a significant number.[3]

15   Like in *Allino*, where the court held that 3,200 jobs nationally were not significant, here, "no case

16   in this Circuit has ever found a number similar" to 8,600 to be a significant number of jobs in the

17   national economy.  *See Allino*, 83 F. Supp. 3d at 888.  As noted in *Allino* and demonstrated by

18   *Valencia*, where the court held 14,082 jobs nationally was not significant, courts have found

19   numbers in excess of the 8,600 jobs available to Bihil to be not significant.  *See Allino*, 83 F.

20   Supp. 3d at 888; *Valencia*, 2013 WL 1209353, at *18–19.  The Court therefore declines to find

21   that the 8,600 jobs suitable for Bihil in the national economy constitute a significant number of

22   jobs.

23   _____

24   [3] This figure includes 3,600 national jobs as a stuffer, as is reflected in the ALJ's opinion.  The
     transcript of the hearing indicates that the VE may have testified that there are actually 36,000 jobs
25   available as a stuffer nationwide.  If there are 36,000 jobs then this would be a significant number
     of jobs as this figure alone would surpass the 25,000 jobs nationwide that the Ninth Circuit held
26   was significant in *Gutierrez*.  *Gutierrez*, 740 F.3d at 528–29.  However, it is more likely that 3,600
     is the correct figure as it would match the ratio of national to regional jobs of the other jobs given
27   by the VE.  If 3,600 is correct, each job has a ratio of 10 to 15 jobs nationally for every one job in
     California.  Clarification is required in further proceedings as to the correct number of stuffer jobs
28   available.

## 2.        Adequacy of Vocational Expert's Testimony of Non-Specific Jobs

The ALJ's reliance on the VE's unspecific testimony regarding other jobs available to Bihil was legal error. At Step Five, "the Commissioner must 'identify *specific* jobs existing in substantial numbers in the national economy that claimant can perform despite her identified limitations.'" *Meanel*, 172 F. 3d. at 1114 (emphasis added) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)).

In *Valencia*, the court held that that an ALJ committed legal error when the ALJ relied on unspecific evidence about available jobs to support a finding of no disability. *Valencia*, 2013 WL 1209353, at *19. There, the VE testified that a person with the claimant's RFC could work as a surveillance system monitor. *Id.* at *4. The VE testified that there were 114 surveillance system monitor jobs regionally and 14,082 jobs nationally. *Id.* The VE also opined that the surveillance system monitor jobs are "greatly underreported" and that "most" surveillance system monitor jobs are not included in those figures. *Id.* The ALJ accepted this opinion as a basis for the ALJ's finding of no disability. *Id.* at *11. The court found that the lack of specificity in the VE's testimony about additional jobs available to the claimant meant that there was not "substantial evidence to support the ALJ's finding that a significant number of surveillance-system monitor jobs exist." *Id.* at *19.

Here, the VE's testimony about additional jobs available to Bihil was not sufficiently specific. The VE testified that there were 100 to 120 additional occupational titles encompassing about 100,000 jobs that would also be suitable for Bihil. AR at 53. Noting this fact, the ALJ formed her conclusion that Bihil was not disabled because work suitable for her existed in significant numbers in the national economy, "based on the testimony of the vocational expert." *Id.* at 28. Like in *Valencia*, where the court rejected an ALJ's reliance on a VE's unspecific testimony regarding additional potential jobs that the claimant could do, here the VE's vague testimony about an additional 100,000 jobs that Bihil could perform is not sufficiently specific to support the ALJ's finding that work suitable for Bihil exists in substantial numbers in the national economy. *See Valencia*, 2013 WL 1209353, at *19; AR at 53. The VE's failure to discuss additional *specific* jobs available to Bihil deprives her of the opportunity to meaningfully

United States District Court
Northern District of California

16

challenge whether such jobs are in fact suitable for her.  The ALJ's conclusion that Bihil was not disabled, to the extent that the ALJ relied on the VE's non-specific testimony about 100,000 additional jobs that Bihil could perform as opposed to the specific occupations that the VE identified, was legal error.

Further proceedings are needed for the ALJ to elicit specific testimony from the VE regarding additional jobs and whether they exist in significant numbers.

### D.      Failure to Call a Medical Expert

The ALJ's decision not to call a medical expert was an appropriate exercise of her discretion under SSR 96-6p and was not legal error.

SSR 96-6p governs when an ALJ must receive additional medical testimony into the record. It states:

> When an administrative law judge or the Appeals Council finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant. However, an administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> * When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> * When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p (S.S.A. July 2, 1996).

Applied here, the ALJ did not err in failing to call a medical expert to testify about the listing equivalence of Bihil's impairments.  Additional medical evidence was received into the record after the state agency medical consultant's finding that Bihil's impairments did not equal a listed impairment, so the Court looks to the second circumstance in which an ALJ must call on a medical expert.  *See* AR at 22–26.  Based on the ALJ's opinion, it is clear that she did not believe that the additional evidence would have changed the state agency's finding regarding Listing

equivalency.  *Id.*  The ALJ found that "*even if*" she adopted Bihil's argument wholesale, "the claimant's impairments would have, at best, supported Listing level impairment," and thus a finding of disability, for a "closed period" between Bihil's injury in December 2000 and when Bihil stopped receiving worker's compensation benefits in 2004.  *Id.* at 26.  The ALJ went on to find that even if Bihil had been disabled for that closed period, her medical records did not support a finding of disability after 2004 given the lack of evidence of continuing symptoms or treatment of Bihil's impairments.  *Id.*  The ALJ stated that the RFC she applied, rather than a finding of disability, is "more consistent with the record as a whole for any potentially payable period of disability and disability insurance benefits."  *Id.*  There is no indiciation that the ALJ believed additional evidence would have changed the consultant's opinion of Bihil's impairments during a relevant time period—i.e., within the 12 months before she submitted her application.  Based on the ALJ's finding that Bihil would be ineligible for disability benefits even if Bihil's impairments equaled a Listed impairment for a closed period, the ALJ was entirely within her discretion to decline to call a medical expert to testify to potential Listing equivalency at Bihil's hearing.

IV.     **CONCLUSION**

The Court finds that the ALJ erred in finding that work suitable for Bihil exists in significant numbers in the national economy.  The ALJ's decision is reversed.  The Court GRANTS Plaintiff's Motion for Summary Judgment, DENIES the Commissioner's Motion for Summary Judgment, and REMANDS this case for further administrative proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: August 5, 2016

JOSEPH C. SPERO
Chief Magistrate Judge